## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK M. SCHOEMAKER, individually
and on behalf of all others similarly
situated,

                Plaintiffs,

     v.

BROOKS AUTOMATION, INC.

              Defendant.

Case No. 5:17-cv-03872-JLS

The Honorable Jeffrey L. Schmehl

     This Joint Stipulation of Settlement and Release (collectively, the "Agreement"), is entered into by and between the Collective Members (as hereinafter defined), on the one hand, and Brooks Automation, Inc. (as hereinafter defined) on the other hand.

### RECITALS

     WHEREAS, on August 28, 2017, Mark Schoemaker filed an Individual and Collective Action Complaint entitled *Schoemaker v. Brooks Automation, Inc.* (No. 5:17-cv-03872) in the United States District Court for the Eastern District of Pennsylvania;

     WHEREAS, the Complaint asserted class claims under the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment Collection Law, and collective claims under the Fair Labor Standards Act ("FLSA") and sought recovery of unpaid overtime wages and compensable time, liquidated damages, and attorneys' fees and costs, as well as injunctive and declaratory relief;

     WHEREAS, the aforementioned Complaint will be referred to as "the Litigation;"

     WHEREAS, Brooks denied and continues to deny all of the allegations made by the Collective in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Brooks has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

     WHEREAS, Collective Counsel (as hereinafter defined) has litigated this case for fifteen (15) months during which time they have conducted discovery, both written and depositions, sent out court-authorized notice, and negotiated the terms of this Agreement;

WHEREAS, Collective Counsel has analyzed and evaluated the merits of the claims made against Brooks in the Litigation, and the impact of this Agreement on the Collective (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Collective, or might result in a recovery that is less favorable to the Collective, and that would not occur for several years, Collective Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Collective.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.     **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1     **Collective Action Complaint.** "Collective Action Complaint" shall mean the Complaint filed by Mark Schoemaker in *Schoemaker, individually and on behalf of all others similarly situated v. Brooks Automation*, Civil Action No. 5:17-cv-03872 (Eastern District of Pennsylvania).

1.2     **Collective; Collective Member.** "Collective" shall mean all persons who opted-in to the Litigation by filing a "Consent to Join" form on the docket as of June 5, 2018. A member of the Collective is a "Collective Member."

1.3     **Collective Counsel.** "Collective Counsel" shall mean McCarthy Weisberg Cummings, P.C.

1.4     **Court.** "Court" shall mean the United States District Court for the Eastern District of Pennsylvania, the Honorable Jeffrey L. Schmehl presiding.

1.5     **Brooks.** "Brooks" shall mean Brooks Automation, Inc., and all its affiliates, parents, subsidiaries, divisions, and/or other related entities, and all of its and their incumbent and former officers, directors, owners, shareholders, investors, agents, attorneys, fiduciaries, employees, successors, assigns and representatives.

1.6     **Brooks' Counsel.** "Brooks' Counsel" shall mean Littler Mendelson, P.C. For purposes of providing any notices required under this Agreement, Brooks' Counsel shall refer to Paul C. Lantis, Esquire, Littler Mendelson, P.C., 1601 Cherry Street, Suite 1400, Philadelphia, PA 19102.

**1.7**   **Litigation.**  "Litigation" shall mean *Schoemaker, individually and on behalf of all others similarly situated v. Brooks Automation*, Civil Action No. 5:17-cv-03872 (Eastern District of Pennsylvania).

**1.8**   **Named Plaintiff.**  "Named Plaintiff" shall refer to Mark Schoemaker.

**1.9**   **Order Granting Approval.**  "Order Granting Approval" shall mean the final Order entered by the Court approving this Settlement Agreement.

**1.10**   **Parties.**  "Parties" shall mean Plaintiff, the Collective, and Brooks.

**1.11**   **Service Award.**  "Service Award" shall mean all amount(s) paid to Named Plaintiff in addition to amounts he will receive per the settlement allocation formula, for his services in assisting in the litigation and settlement of this matter.

**1.12**   **Settlement Payment.**  "Settlement Payment" shall mean the Two Hundred and Fifteen Thousand Dollars ($215,000.00) payment that Brooks pays to settle the Litigation as described in Section 3.1.

**2.**   **APPROVAL**

**2.1**   **Motion for Approval.**  Within fourteen (14) days after the execution by all Parties of this Agreement, the Parties will jointly move the Court to, among other things, (a) enter an Order in accordance with this Agreement; (b) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Collective Members; and (c) dismiss the Litigation with prejudice.

**2.2**   **Effect of Failure to Grant Approval.**  In the event the Court fails to enter an Order in accordance with this Agreement, or such Order does not become Final as defined herein, the Parties shall proceed as follows:  The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of an Order approving this Agreement, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Court will provide notice to Collective Members that the Agreement did not receive approval and that, as a result, no payments will be made to Collective Members under the Agreement.  Such notice shall be mailed by Plaintiff's Counsel via First Class United States Mail, postage prepaid.

**2.3**   **Termination of Agreement.**  In the event this Agreement is not granted final approval, this Agreement shall not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class is certifiable, or any other matter.

**3.**   **SETTLEMENT TERMS**

**Settlement Payment.**  Brooks agrees to pay Two Hundred and Fifteen Thousand ($215,000.00), which shall resolve and satisfy any claim for attorneys' fees and costs

approved by the Court, any and all amounts to be paid to Collective Members, and any fees associated with facilitating the Settlement Payment.  Brooks will not be required to pay more than $215,000.00 under the Agreement.

**3.1**   **Settlement Amounts Payable as Attorneys' Fees and Costs.**  Collective Counsel shall receive 33 1/3% of the Settlement Payment ($71,666.67) as an award of attorneys' fees and Two Thousand Five Hundred Dollars ($2,500.00) of the Settlement Payment as reasonable litigation costs and expenses.  Brooks shall have no additional liability for fees and costs, including without limitation, administrative costs, expert fees and costs, or attorneys' fees and costs.  Assuming that the amounts in this Subsection are approved by the Court in the Order Granting Approval, Brooks shall pay the amounts to Collective Counsel within thirty (30) days of the Order Granting Approval.

**3.2**   **Settlement Amounts Payable as Service Awards.**  Named Plaintiff shall receive Seven Thousand Five Hundred Dollars ($7,500.00) of the Settlement Payment as a Service Award.  The Service Award is being provided to Named Plaintiff because Named Plaintiff has provided service to the Collective by helping Collective Counsel formulate claims and by assisting in bringing the Litigation forward.  Assuming that the amount in this Subsection is approved by the Court in the Order Granting Approval, Brooks shall pay the amount to Named Plaintiff within thirty (30) days of the Order Granting Approval.

**3.3**   **Distribution to Collective Members.**

(A)   Brooks shall pay the Collective a total of One Hundred and Thirty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($133,333.33) of the Settlement Payment ("Net Settlement Payment").  The Collective Members acknowledge and agree that: (1) absent this Agreement, they would not otherwise be entitled to the Net Settlement Payment; (2) the Net Settlement Payment is not required by any contract, law, or otherwise, except this Agreement according to its terms; and (3) the Collective Members have been paid in full all money they were owed by Brooks arising from and/or relating to the Litigation.  The Collective Members further acknowledge that the payment by Brooks of the Net Settlement Payment are the only payments that are due from Brooks and that, other than the Net Settlement Payment, Brooks has no obligation of any kind to the Collective Members for any other payment of any kind, except as otherwise described herein, including, but not limited to, attorneys' fees and costs, and the Collective Members hereby waive any claim to other payment of any kind whatsoever.

(B)   The Net Settlement Payment shall be distributed to the Collective in a pro-rata manner based upon each Collective Member's percentage of the total amount due using the amount of time each worked during the two (2) year look-back period from the date each Collective Member filed the Consent to Join form.  Collective Members who did not perform any work for Brooks during the two (2) years preceding the date that they filed the Consent to Join form will receive a

4

minimum payment of Five Hundred Dollars ($500.00). Based on this formula, the Collective Members shall receive the following portions of the Net Settlement Payment:

| Collective Member Name | Percentage of total | Payment per Collective Member |
|---|---|---|
| Bernhard Burchert | 0.00% | $ 500.00 |
| Jorge Contreras | 11.42% | $ 15,002.31 |
| Vadym Danylyuk | 7.64% | $ 10,030.42 |
| Surinder Dhillon | 7.78% | $ 10,221.69 |
| Bryan Figg | 17.62% | $ 23,146.08 |
| Richard Flowers | 0.00% | $ 500.00 |
| Jerry Jean | 0.00% | $ 500.00 |
| Larry Kilcrease | 0.64% | $ 844.33 |
| Gabriel LeVon Houston | 1.82% | $ 2,396.68 |
| Allen Odenkirchen | 0.00% | $ 500.00 |
| Robert Peterson | 13.20% | $ 17,330.19 |
| Mark Shoemaker | 19.74% | $ 25,929.27 |
| Mitchell Wharton | 4.64% | $ 6,089.47 |
| Kevin Zittel | 15.49% | $ 20,342.88 |

(C)     Assuming that the amounts in this Subsection are approved by the Court in the Order Granting Approval, Brooks shall issue two (2) checks to each of the Collective Members, pursuant to the terms of Section 3.5, and forward those check to Collective Counsel within thirty (30) days of the Order Granting Approval.

3.4     **Taxability of Settlement Payments.**

(A)     For tax purposes, eighty percent (80%) of the payments set forth in Section 3.4(B) to each of the Collective Members shall be treated as back wages, and twenty percent (20%) of the payments shall be treated as non-wage damages.

(B)     Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments of non-wage damages and attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     The state and federal payroll taxes imposed by applicable law, excluding the employer's share of FICA and any other taxes, with respect to the amounts treated as wages pursuant to Section 3.5(A) shall be paid out of the Settlement Payment.

(D)     The Collective and Class Counsel acknowledge and agree that each individual Collective Member, including Named Plaintiff,  will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold Brooks harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Brooks as a result of a Collective Member's failure to timely pay such taxes.  The Collective Members acknowledge and agree that they have not relied upon any advice from Brooks as to the taxability of the payments received pursuant to this Agreement.

4.      **RELEASE**

4.1     **Release of Claims.**

(A)     By operation of the entry of the Order Granting Approval, and except as to such rights or claims as may be created by this Agreement, the Collective Members, including Named Plaintiff, fully release Brooks from all state wage and hour laws for failure to pay for hours worked and/or overtime wages, as well as attorneys' fees and costs related to such claims through the date this Agreement is signed by Collective Counsel.

(B)     In addition to the Released Claims described in Section 4.1(A), all the Collective Members, including Named Plaintiff, forever and fully release Brooks from all claims for unpaid overtime wages, liquidated damages, and attorney's fees and costs related to such claims under the Fair Labor Standards Act through the date this Agreement is signed by Collective Counsel ("FLSA Released Claims").

**4.2     Release of Fees and Costs for Settled Matters.**  Collective Counsel and the Collective Members hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Brooks for attorneys' fees or costs associated with Collective Counsel's representation of the Collective.  Collective Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Collective Counsel's representation of these individuals.

**4.3     No Assignment.**  Collective Counsel and the Collective Members represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**4.4     Non-Admission of Liability.**  By entering into this Agreement, Brooks in no way admits any violation of law or any liability whatsoever to the Collective, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Brooks in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Brooks enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with the Collective.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Brooks or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Brooks in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**5.       MISCELLANEOUS**

**5.1     Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2     Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3** **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Collective Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.4** **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**5.5** **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.6** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.7** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the Commonwealth of Pennsylvania, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.8** **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Brooks' payment obligations hereunder. The Parties explicitly agree that no disputes relating to the interpretation or enforcement of this Agreement are subject to any arbitration agreement(s) between the Parties.

**5.9** **Waivers, etc. to be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.10** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Collective Counsel and Brooks had signed the same instrument.

**5.11   Facsimile Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile to counsel for the other party.  Any signature made and transmitted by facsimile for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile.

**5.12   Authorization of Signature.**   Collective Counsel is duly authorized to sign this Agreement on behalf of the Collective.

**5.13   Press Releases.**   The Parties and/or their counsel will not issue any press release, solicitations, public statements or comments in any format (including electronic postings) regarding the settlement of this matter.

DATED: 12/3/18

Brooks Automation, Inc.

By: _____

Its: _Senior Vice President, General Counsel & Secretary_

DATED: 11-29-18

MCCARTHY WEISBERG CUMMINGS, P.C.
as Collective Counsel

By: _____
        Larry Weisberg

FIRMWIDE:160665499.1 069084.1005

9